In the Matter of SCOTT, GORMAN MUNICIPALS, INC., Bankrupt.

Chauncey H. LEVY, Trustee in Bankruptcy of Scott, Gorman Municipals, Inc., Plaintiff,

v.

CHEMICAL BANK, et al., Defendants.

Bankruptcy No. 75 B 1538.

United States Bankruptcy Court, S. D. New York.

June 30, 1982.

Hershcopf & Stevenson, New York City, for trustee; Abraham J. Backenroth, New York City, of counsel.

Healy & Baillie, New York City, for claimants; Raymond A. Connell, New York City, of counsel.

## MEMORANDUM OPINION

JOEL LEWITTES, Bankruptcy Judge.

In this adversary proceeding [1] commenced by the Trustee in Bankruptcy of Scott, Gorman Municipals, Inc. ("SGM"), both the Trustee and defendants Milton and Martha Staub have moved for summary judgment.[2] Although, the Trustee's motion is addressed to several defendants, this decision resolves only the dispute as between the Trustee and the Staubs.

The undisputed facts are as follows:

On April 16, 1975 Chemical entered into an agreement with SGM whereby Chemical agreed to service a clearing account for the purchase and distribution of securities acquired by SGM. Chemical agreed to extend credit up to $1 million for the purchase by SGM of such securities. In return SGM granted Chemical a security interest in all SGM property held by Chemical.

In early August, 1975, the Staubs placed an order with an employee of SGM for the purchase of 14 New York State Housing Finance Agency bonds having a face value of $70,000. SGM then ordered $60,000 of such bonds from Merrill Lynch and $10,000 from Rothschild (L.F.) & Co. In accordance with standard procedure these purchases were confirmed by sending to each of the brokers two "buy" tickets identifying the bonds purchased, and instructing them to deliver the bonds to the SGM clearing account at Chemical. A similar "buy" ticket was sent to the SGM clearing account at Chemical to advise Chemical that the bonds would be delivered to them. Advice of the transaction was sent to the Staubs.

In the latter part of August, the Staubs sent a check to SGM in payment of the bonds ordered, together with the notice of the transaction which had been mailed to the Staubs. In the normal course of events, SGM would have sent delivery instructions to Chemical to release the bonds to the Staubs, but in this case the delivery instructions were never sent.

On September 2, 1975 SGM filed a Chapter XI petition under § 322 of the 1898 Bankruptcy Act ("the Act").[3] On November 3, 1975 SGM was adjudicated a bankrupt and a Trustee was elected. At the time of the filing of the Chapter XI petition, bonds identical to those ordered by the Staubs, were being held by Chemical in the SGM clearing account.

On June 20, 1977 the Trustee commenced an action against Chemical and *all* customers of SGM requesting, *inter alia*, an order determining that no customers of SGM have a claim for specifically identifiable property as defined by § 60e(4) of the 1898 Bankruptcy Act. The Staubs counterclaimed for a turnover of their bonds. After discovery was taken, motions for summary judgment were made and decision was reserved as to the Staubs' claim.

### Discussion

Section 60e of the Act [4] represents Congress' first attempt to deal specifically with the problem of stockbroker bankrupt-

---

1. *See* Bankruptcy Rule 701, 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d lxvi

2. *See* Bankruptcy Rule 756, 411 U.S. 1084, 93 S.Ct. 3159, 37 L.Ed.2d lxxii, this Court's procedural mate to Fed.R.Civ.P. 56.

3. 11 U.S.C. § 721. Although the 1898 Bankruptcy Act has since been repealed, § 401(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2550, cases commenced prior to October 1, 1979 continue to be "conducted and determined under such [1898] Act." *Ibid.* § 403(a).

4. 11 U.S.C. § 96(e) (repealed).

cies.[5] That section elevates customer[6]—claimants to a special priority status with regard to distribution from a fund made up of property held by a stockbroker "from or for the account of customers, except cash customers who are able to identify specifically their property in the manner prescribed in paragraph (4)" of section 60e. Paragraph (4) of section 60e provides, in relevant part, that no cash or securities received by the bankrupt on behalf of a cash customer shall be deemed specifically identified:

(a) "unless such property remained in its identical form in the stockbroker's possession until the date of bankruptcy."

The Staubs, whose "cash customer" status is not challenged by the Trustee, argue that the bonds in question should be returned to them as specifically identifiable property within the meaning of section 60e(4). The Trustee, seeking to preserve the bonds for the fund to be distributed to all customer—claimants, argues, *inter alia*, that the Staubs cannot utilize section 60e(4) to claim the bonds in question because the bonds never left the Chemical clearing account and thus never came into the possession of the bankrupt as required by the statute.

Only one reported case,[7] has discussed the issue of "stockbroker possession" under section 60e(4). There, as here, a customer sought to reclaim securities held in a clearing account which were subject to a lien. The court determined that the bonds were not in the possession of the stockbroker as required by section 60e(4). In so holding, the court rejected tests of "stockbroker possession" drawn from state law, concluding that

"Congress intended the provisions concerning specific identification to be strict-ly construed in order to further the purpose of providing equal treatment of brokerage house customers."[8]

Finding this reasoning persuasive, we similarly reject the argument advanced by the Staubs, which draws on Article 8 of the Uniform Commercial Code and on decisions dealing with the jurisdiction of the bankruptcy court under the Act.

Accordingly, the Trustee is entitled to summary judgment on his declaratory action seeking a determination that the Staubs have no claim for specifically identifiable property under section 60e(4).

The Staubs' motion for summary judgment on their counterclaim is denied and the Trustee is granted summary judgment dismissing the counterclaim.[9]

Settle order on notice.

---

**5.** Gilchrist *Stockbrokers' Bankruptcies: Problems Created By The Chandler Act*, 24 MINN.L. REV. 52 (1939).

**6.** A Customer is defined in § 60e(1) to include "persons who have claims on account of securities received, acquired or held by the stockbroker from or for the account of such persons."

**7.** *Paragon Securities Co. v. Levine* (*In re Paragon Securities Co.*), 599 F.2d 551 (3d Cir. 1979).

**8.** *Id.* at 557 (citations omitted).

**9.** In view of our disposition of the Trustee's motion, we do not consider his other contentions in support of that motion.