In the Matter of SCOTT, GORMAN MUNICIPALS, INC., Bankrupt.

Chauncey H. LEVY, Trustee in Bankruptcy of Scott, Gorman Municipals, Inc., Plaintiff,

v.

CHEMICAL BANK, et al., Defendants.

No. 82 Civ. 8339 (DNE).

United States District Court, S.D. New York.

March 24, 1983.

**660**

Herschcopf & Stevenson, New York City, for trustee; Abraham J. Backenroth, New York City, of counsel.

Healy & Baillie, New York City, for claimants; Raymond A. Connell, Hastings-on-Hudson, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge.

This is an appeal from an order of the United States Bankruptcy Court, Southern District of New York entered August 3, 1982 denying a claim by Martha and Milton Staub ("the Staubs"), appellants, to four Finance Agency Bonds with a face value of $20,000, as "specifically identifiable property" pursuant to § 60(e) of the Bankruptcy Act, 11 U.S.C. § 96(e).[1]

### STATEMENT OF THE FACTS[2]

On April 16, 1975, Chemical entered into an agreement with Scott, Gorman Municipals, Inc. ("SGM") whereby Chemical agreed to service a clearing account for the purchase and distribution of securities acquired by SGM. Chemical agreed to extend credit up to $1 million for the purchase by SGM of such securities. In return SGM granted Chemical a security interest in all SGM property held by Chemical.

In early 1975, the Staubs placed an order with an employee of SGM for the purchase of 14 New York State Housing Finance Agency Bonds having a face value of $70,-

---

1. Although the 1898 Bankruptcy Act has since been repealed, § 401(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2550, cases commenced prior to October 1, 1979 continue to be "conducted and determined under such [1898] Act." Id.

§ 403(a). This action was commenced prior to that date.

2. The facts are as stated in the opinion below, *In re Scott, Gorman Municipals, Inc.,* 21 B.R. 341 at 342–343 (Bkrtcy.S.D.N.Y.1982).

000.[3] SGM then ordered $60,000 of such bonds from Merrill Lynch and $10,000 from L.F. Rothschild & Co. In accordance with the standard procedure these purchases where confirmed by sending to each of the brokers two "buy" tickets identifying the bonds purchased, and instructing them to deliver the bonds to the SGM clearing account at Chemical Bank. A similar "buy" ticket was sent to the SGM clearing account at Chemical to advise Chemical that bonds would be delivered to them. Advice of the transaction was sent to the Staubs.

In the latter part of August, the Staubs sent a check to SGM in payment of the bonds ordered, together with the notice of the transaction which had been mailed to the Staubs. In the normal course of events, SGM would have sent delivery instructions to Chemical to release the bonds to the Staubs, but in this case the delivery instructions were never sent.

On September 2, 1975, SGM filed a Chapter XI petition under § 322 of the 1898 Bankruptcy Act. On November 3, 1975 SGM was adjudicated a bankrupt and a Trustee was elected. At the time of the filing of the Chapter XI petition, bonds identical to those ordered by the Staubs, were being held by Chemical in the SGM clearing account.

On June 20, 1977, the Trustee commenced an action against Chemical and all customers of SGM requesting an order determining that no customers of SGM have a claim for specifically identifiable property as defined by § 60(e)(4) of the 1898 Bankruptcy Act. The Staubs counterclaimed for a turnover of their bonds. The court denied the Staub's motion for Summary Judgment and granted the Trustee's motion for Summary Judgment dismissing the counterclaim. The Staubs filed a Notice of Appeal on August 6, 1982.

## DISCUSSION

A. *Recovery Under the Bankruptcy Act*

The issue before this court is whether the Staubs are entitled to recover the

bonds as "cash customers who are able to identify specifically their property in the manner prescribed in paragraph (4) of [the] subdivision." 11 U.S.C. § 96(e)(2). Section 4 provides that securities are specifically identifiable if:

(1) they remained in their identical form in the stockbroker's possession until the date of bankruptcy; or

(2) they are allocated to or physically set aside for a cash customer either

(a) more than four months before bankruptcy; or

(b) at a time while the stockbroker was still solvent; and remained so allocated or set aside at the date of bankruptcy.

11 U.S.C. § 96(e)(4). Subsection 2 does not apply as the appellants concede that the purchases took place within four months of bankruptcy and while the stockbroker was insolvent. (Brief for appellant at 10). This leaves subsection 1 as the sole alternative for identifying the bonds under the Act.

The Staubs claim that the bonds purchased and held at Chemical were identifiable as the property of the Staubs through "client tag numbers" that appear on all SGM "buy tickets" and "sale tickets" used in conjunction with the clearing account "Security Tag." (Brief for appellant at 11). The theory presented by the Staubs does not conform to the type of proof required under subsection 1—that the bonds must be in identical form in the stockbrokers possession until bankruptcy and is an attempt to circumvent the specific requirements of the Act.

The Staubs also contend that the bonds remained in identical form in the stockbroker's possession until bankruptcy based upon the receipt of the bonds by Chemical, who serviced a clearing account for SGM. These bonds were subject to the security interest in all securities held by Chemical for SGM. The court below relied on the "one reported case [that] discussed the issue

---

3. On July 31, 1979, pursuant to a general distribution to all SGM customers, a Stipulation was filed pursuant to which the Staubs received ten of the fourteen bonds purchased—the remaining four bonds were placed in escrow with the Trustee pending the outcome of this action.

of 'stockbroker possession' under section 60e(4)", *Paragon Securities Co. v. Levine,* 599 F.2d 551 (3d Cir.1979), and this position is adopted herein. The court in deciding this same issue in a similar fact situation states that "[t]his lien severely limited the [broker's] ability to control the bonds. Thus under the first test of section 60e(4), the bonds were not in their 'identical form in the stockbroker's possession.'" 599 F.2d at 557. The appellant is therefore precluded from recovery under the Bankruptcy Act.

## B. *Recovery Under the U.C.C.*

Alternatively, the appellant contends that the bonds were delivered to the Staubs under § 8–313(1)(c) of the Uniform Commercial Code. N.Y. Uniform Commercial Code § 8–313(c) (McKinney 1982), at 255. The bonds are considered investment securities and as such are governed by Article 8 of the U.C.C. The statute states in part that:

(1) Delivery to a purchaser occurs when

. . . . .

(c) his broker sends him confirmation of the purchase and also by book entry or otherwise identifies a specific security in the broker's possession as belonging to the purchaser. *Id.* The Staubs received a confirmation of the transaction from SGM so that this requirement has been fulfilled. The remaining questions are whether the stocks were in the possession of the broker and whether the securities were identified by the broker as belonging to the purchaser.

■ It is clearly established that under § 8–313(1)(a) the purchaser must obtain actual possession of the security to obtain delivery and ownership. *Kaufman v. Diversified Industries, Inc.,* 460 F.2d 1331,

1334 (2d Cir.), *cert. denied,* 409 U.S. 1038–39, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972). The meaning of "possession" relating to possession of securities by a broker has been addressed in this district in a action related to the *Paragon* case discussed above. *See Matthysse v. Securities Processing Services, Inc.,* 444 F.Supp. 1009, 1017–18 (S.D.N.Y. 1977). The court stated that "effective 'possession' of the bonds . . . is established for purposes of this subsection by virtue of [the] contractual relationship with [the clearing agent], which held the bonds on behalf of the [stockbroker] as its clearing agent and subject to its directions." *Id.* at 1018.[4] SGM may be considered to have had effective possession of the bonds under this rationale. The relationship between SGM and Chemical is equivalent to the relationship between the broker and the clearing agent in *Matthysse.* The concept of effective possession enunciated in *Matthysse* is therefore reaffirmed herein.

■ The remaining question is whether the bonds could be specifically identified by a book entry or otherwise. While this may appear to be the same issue addressed above in connection with § 60(e), the limitations placed upon the proof of identification by the Bankruptcy Act are not present. The theory of identification using the "client tag numbers" is therefore relevant to this analysis. There is a dispute regarding the validity of these tag numbers as a means of identification.[5] The Bankruptcy Court did not reach this issue as it required actual physical possession to recover. This action is therefore remanded to the Bankruptcy Court to permit the parties to address the issue of the tag numbers, their traditional use, and potential ability to be

---

**4.** Possession arises out of the contractual relationship, not the receipt of delivery instructions as suggested by the appellees. Brief for appellee at 6–7. The appellee's reference to the opinion in support of this position relates to whether the securities were specifically identifiable, not whether the broker had effective possession.

The appellees refer to *Paragon,* 599 F.2d at 555, to require actual physical possession of the security. The court in *Paragon* relies on

*Matthysse* for this proposition. The *Paragon* court as well as the appellee misconstrue the *Matthysse* court's definition of actual possession which included "effective possession."

**5.** The appellees claim that the exhibits relating to the tag numbers merely reflect "the broker's long and short position on any particular bond and certainly represents by no stretch of the imagination an 'allocation' of bonds to the Staubs." Brief for Appellee at 10 n. 5.

used for identification consistent with the concept of "effective possession" under the ·U.C.C.

SO ORDERED.